## EXHIBIT A

## AFFIDAVIT OF JOSEPH A. GAETA

I, Joseph A. Gaeta, being duly sworn, do hereby depose and state that:

1. I am a Special Agent with United States Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"), presently assigned to the Office of The Special Agent in Charge Boston, Massachusetts. I have been so employed by ICE HSI, and its predecessor agency, the Immigration and Naturalization Service ("INS"), since April of 1987.

2. I am currently assigned to the National Security Group, investigating cases that relate to the violation of the Student & Exchange Visitor Information System cases involving International Human Rights Violators, and any cases involving the national security of the United States. Prior to my current group assignment, I was assigned to the Airport & Seaport Group from April of 2012 until May of 2016. While I was assigned to the ASG, I was involved in cases that involved the investigation of commercial smuggling, contraband (to include narcotics and United States currency), and Intellectual Property Rights violations committed against the United States. I have also investigated numerous cases that involve violations of the Immigration & Nationality Act.

3. I have received training in the detection and investigation of ICE-related violations at the Federal Law Enforcement Training Centers located in Brunswick, Georgia, and in Artesia, New Mexico. I have also attended numerous local training sessions provided by ICE and by the former INS.

4. I submit this affidavit in support of a Complaint for Forfeiture *in Rem* against the following asset:

      a.      $99,000 in United States currency, seized from Riel S. Mills at Logan International Airport in Boston, Massachusetts on December 14, 2015 (the "Currency").

5.     This affidavit does not contain all the information known to me and other law enforcement officers regarding this investigation, but only those facts sufficient to establish probable cause for forfeiture of the Currency.

6.     This affidavit is based upon my personal knowledge, as well as information provided to me by law enforcement personnel from the Massachusetts State Police ("MSP"), and my review of records and reports relating to the investigation.

7.     As set forth below, I have probable cause to believe that the Currency is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6) because it represents moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of 21 U.S.C. §§ 841 and/or 846, proceeds traceable to such an exchange, and/or moneys, negotiable instruments, and securities used or intended to be used to facilitate such a violation.

### Seizure of the Currency

8.     On December 14, 2015, Delta Airlines Flight #DL689 from Boston, Massachusetts, to Salt Lake City, Utah, with a connecting flight to Medford, Oregon, was scheduled to depart Logan International Airport at 5:45 a.m.

9.     On December 14, 2015, Riel S. Mills ("Mills") arrived at Terminal A, checked in for Flight #DL689, and proceeded to the security line to be screened by the Transportation Security Administration ("TSA"). The State of Oregon, where Mills resides, has been identified by MSP as a source area for marijuana. The Logan Airport Task Force has seized and successfully forfeited hundreds of thousands of dollars traveling through Logan Airport to

2

destinations throughout the states of California, Washington, and Oregon.

10.     At approximately 5:00 a.m., while screening Mills' carry-on luggage, TSA Officer Elizabeth MacDonald ("Officer MacDonald") saw that Mills' bag contained a suspicious "mass." Officer MacDonald asked TSA Officer Kevin Montero ("Officer Montero") to conduct a secondary screening of the luggage, which revealed that Mills had four sealed plastic bags of currency inside (i.e., the Currency).

11.     An officer from the TSA notified MSP Trooper Nikolo Falco ("Trooper Falco") and Sergeant Joseph Donlon ("Sgt. Donlon") about discovery of the Currency, and Trooper Falco and Sgt. Donlon responded to the checkpoint to speak with Mills. They told Mills that she was not in custody and was free to leave at any time, and Mills stated that she understood. Mills was told that the Currency in her possession required further investigation. Mills said she understood, and agreed to go to the State Police – Troop F Barracks (the "Barracks") so that the money in her luggage could be counted and investigated.

12.     Mills was transported to the Barracks in a cruiser, but she was not handcuffed at any time. When Mills arrived at the Barracks, she was informed that detectives from Logan were on their way to the Barracks.

13.     MSP Trooper David Walsh ("Trooper Walsh") arrived at the Barracks at approximately 6:00 a.m. Trooper Walsh observed that the Currency was packaged in four plastic bags. He contacted Trooper Eric Pecjo ("Trooper Pecjo") of the MSP canine unit and requested that Trooper Pecjo and his canine partner, Ziva, respond to the Barracks. Trooper Pecjo has been employed by the MSP for 20 years, and was first assigned to the MSP canine unit in April 2015. Ziva is a 5-year old Belgian Malinois trained in the detection of narcotics odor. Trooper Pecjo uses Ziva for various tasks including the detection of odors such as explosives, accelerants (for

arson investigations) and narcotics; tracking humans for suspect apprehension in police work; and for search and rescue missions. Trooper Pecjo and Ziva received 240 hours of training in the detection of marijuana, cocaine, heroin and methamphetamines from the MSP, following New England State Police Administrators Conference ("NESPAC") standards. Ziva has received ongoing weekly maintenance training since June 22, 2015, consisting of continued training in the detection of marijuana, cocaine, heroin, and methamphetamine, averaging 8-16 hours per month. Trooper Pecjo and Ziva were re-certified in the detection of narcotics on May 24, 2016.

14. Trooper Walsh walked over to Mills, introduced himself, and informed Mills that she was not under arrest and free to leave at any time. Mills agreed to speak with Trooper Walsh. Trooper Walsh asked Mills why she was in Massachusetts, and Mills stated that she was in Massachusetts to conduct business as a sales representative for Jay Glass, LLC of Oregon.[1] Trooper Walsh conducted an open source query of the company by internet, and could only locate one such company, named J-Franklin Glass, LLC, that provided window replacement services. A contact phone number was listed for the company, and Trooper Walsh called the number. A person named Pam (LNU) answered the phone, stated that Mills had no relationship with the company, and Pam did not know Mills.

15. Trooper Walsh told Mills that he had contacted the company and that Mills was not known to them. Mills then told Trooper Walsh that the company she worked for manufactured and sold smoking pipes and other glass products commonly used to smoke marijuana. Mills said she had been in Massachusetts for three days and stayed at the Hilton Hotel located at Logan Airport. Mills told Trooper Walsh that she sold products to multiple glass companies in the Boston area, but would not provide the names of the people or the

---

[1] Mills also identified her company by a second name of J. Franklin Glass, LLC.

businesses that she dealt with. Mills said she was carrying the Currency because there were no Wells Fargo banks or branches in Massachusetts.

16. When asked if she had transaction records for sales Mills made while she was in Massachusetts, she replied, "I do, but they are all packed away." Trooper Walsh pointed to Mills' luggage, which remained in Mills' possession the entire time, and asked Mills to retrieve the sales records. Mills then changed her response and stated that she did not have any transaction or sales records. Trooper Walsh then asked Mills if she kept records of her Massachusetts sales on her computer and she said that she did. When Mills was asked where her computer was located, she did not respond.

17. Mills consented to a search of her luggage, and signed a waiver form. No electronics (computer, iPad) were located in her bag. While searching the luggage, Trooper Walsh could smell a strong odor of fresh marijuana on Mills' clothes and the items in her luggage. He also discovered supplies used to grow marijuana, and a ledger for a person named "Justin." The ledger appeared to have a record of hours worked and grams harvested. Trooper Walsh, through his training and experience, believed the ledger to be a record of an individual who picked and packaged marijuana in exchange for a fee.

18. Trooper Walsh asked Mills to consent to a search of her iPhone. Mills consented, signed a waiver form, and handed her phone to Trooper Walsh. The iPhone contained multiple photographs of marijuana plants. There were also text messages between Mills and a person named Jay (LNU) from the same day. In those text messages, "Jay" told Mills to "tell them the least amount possible," "don't let them trick you," and provided a location for a Wells Fargo Bank in New Hampshire. "Jay" told Mills "just get the receipt and get out of there, the less you tell them the better." Mills' iPhone also contained other text messages between Mills and

various other individuals on dates just prior to the incident, which revealed requests for up to 150 marijuana plants. After the contents of the phone were downloaded to a DVD disc by the MSP, the phone was returned to Mills.

19. At that point, Mills said that she wanted her receipt for the Currency, and did not want to answer any further questions. Trooper Walsh told Mills that the Currency would be counted so that he could provide Mills with the necessary paperwork.

20. Prior to opening the plastic bags and counting the Currency, the Currency was placed in an office, under a desk. At approximately 7:15 a.m., Trooper Pecjo and Ziva arrived to the Barracks. Trooper Pecjo and Ziva entered the office where the Currency was located, and Ziva alerted to the odor of narcotics on the Currency.

21. At that time, Troopers Walsh and McDonald opened the plastic bags containing the Currency. The Troopers could clearly smell a strong odor of marijuana on the Currency. Each bag contained approximately twenty (20), thinly-banded bundles of cash of various amounts and denominations. The total amount of money seized from Mills was $99,000 in United States currency.

22. The money was then transported by Troop F Evidence Officers to Bank of America for deposit into a seized funds account. The Evidence Officers also smelled a strong odor of marijuana on the Currency.

## Conclusion

23. Based upon the information set forth above, I have probable cause to believe that the Defendant Currency is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6) because it represents moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance

or listed chemical in violation of 21 U.S.C. §§ 841 and/or 846, proceeds traceable to such an exchange, and/or moneys, negotiable instruments, or securities used or intended to be used to facilitate such a violation.

Signed under the pains and penalties of perjury this ___7th___ day of August, 2016.

*[signature]*
Joseph A. Gaeta, Special Agent
U.S. Immigration and Customs Enforcement,
Homeland Security Investigations